**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SCOTT MOREHEAD,

     Plaintiff,

         v.                    17-CV-06539

THE SECOND CITY, INC.         Judge Alonso

     Defendant.

**ANSWER TO COMPLAINT**

NOW COMES the Defendant, The Second City, Inc., by and through its attorney, and for its Answer to Plaintiff's Complaint, states as follows:

**Introduction**

1.     Plaintiff, Caucasian, held two positions with Second City, as a cast member in "A Red Line Runs Through It", and as a writer for other programs. He faced a series of racial slurs from an African American cast member and his complaints to the company resulted in failed promises to resolve the situation. Eventually, he was suspended from the cast and not renewed as an actor as would have otherwise been the case. Plaintiff files this complaint for discrimination and discriminatory harassment, and for retaliation.

**ANSWER: Defendant admits plaintiff is Caucasian. Defendant admits that in 2016 plaintiff worked for Second City as a cast member in the production "A Red Line Runs Through It." Defendant admits that separately, plaintiff was employed in The Writer's Room. Defendant denies plaintiff was subject to racial slurs and denies plaintiff complained about racial slurs or racial harassment. Defendant admits plaintiff was taken off the production and replaced by an understudy, as was the African American cast member. Defendant further admits that after "A Red Line Runs Through It," plaintiff was not immediately cast in another Second City production. Defendant denies all allegations of discrimination and discriminatory harassment and retaliation, and denies any other allegations in this paragraph.**

## Parties

2.      Plaintiff, Scott Morehead ("Morehead" or "Plaintiff"), is a Caucasian citizen of the United States who at all relevant times resided within the territorial jurisdiction of the United States District Court for the Northern District of Illinois. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.

**ANSWER:      Admitted.**

3.      Defendant, The Second City, INC., ("Second City") is a corporation located within the territorial jurisdiction of the United States District Court for the Northern District of Illinois. At all relevant times, Defendant Second City was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.

**ANSWER:      Admitted.**

## Procedural Prerequisites

4.      Plaintiff filed a timely charge of race discrimination, Charge number 440-2017-01294, with the Equal Employment Opportunity Commission ("EEOC") on or about December 15, 2016

**ANSWER:      Defendant admits it received notice of an EEOC charge filed by plaintiff identified as 440-2017-01294, with an EEOC file-stamp of December 15, 2016. Defendant lacks sufficient knowledge or information to answer whether the charge was "timely."**

5.      The EEOC issued a notice of Right to Sue on Charge number 440-2017-01294 on August 31, 2017, which Plaintiff received on or about September 6, 2017.

**ANSWER:      Defendant admits it received notice of the EEOC Dismissal and Notice of Right to Sue for charge 440-2017-01294 dated August 31, 2017. Defendant lacks sufficient knowledge or information to answer when plaintiff received the Notice.**

6.      This complaint is timely filed within ninety days of Plaintiff's receipt of his Right to Sue notice.

**ANSWER:     Admitted.**

## Jurisdiction

7.     This Court has subject matter jurisdiction over Plaintiff's race discrimination claim under 42 U.S.C. §2000e *et seq.* (Title VII of the Civil Rights Act of 1964), and 42 U.S.C. §1981 pursuant to 28 U.S.C. § 1331, as this claim involves a federal question.

**ANSWER:     Admitted.**

## Venue

8.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ANSWER:     Admitted.**

## Facts

Background

9.     Scott Morehead was a Caucasian actor under contract with Second City.

**ANSWER:     Admitted.**


10.     Morehead first became involved with Second City in 2006 when he started taking classes through it.

**ANSWER:     Defendant lacks sufficient knowledge or information to answer this allegation.**


11.     Second City often develops its own talent through its educational programs.

**ANSWER:     Defendant admits that actors from the Second City Training Center have appeared in Second City productions, but affirmatively states that the majority of individuals who enroll in classes at the Training Center are not cast in Second City productions.**

12.     Some students develop their skills to the point that Second City places them under contract for one or more of their professional endeavors.

**ANSWER:     Defendant lacks sufficient knowledge or information to answer this paragraph, specifically which "students" the allegation refers to and what is meant by "professional endeavors."**

13.　　Morehead became involved with his first production with Second City in 2010.

**ANSWER:**　　**Admitted upon information and belief.**

14.　　In 2015 Morehead came under contract with Second City as a writer for commercial programs.

**ANSWER:**　　**Defendant denies this paragraph as written. Defendant affirmatively states that in September 2015 plaintiff was hired as a full time Staff Writer, which was an at-will position separate and distinct from any position he held as an actor/ cast member.**

15.　　It is typical for actors under contract with Second City to complete one show and move on to others.

**ANSWER:**　　**Defendant denies this paragraph as written. Defendant lacks sufficient knowledge or information to answer what plaintiff means by "typical," which "actors" plaintiff is referring to, or what he means by "move on to others." Defendant further lacks sufficient knowledge or information to answer whether or where actors are cast in other productions outside of Second City.**

16.　　Any new shows are done with new contracts.

**ANSWER:**　　**Defendant admits that per union rules, each production requires cast members to sign a new contract.**

17.　　Morehead has done seven contracts including theatrical, touring, and resident stage contracts.

**ANSWER:**　　**Denied.**

18.　　Typically actors will have 3-4 resident stage contracts with Second City before taking their careers elsewhere.

**ANSWER:**　　**Denied.**

19.　　Second City is the premier comedy organization in Chicago with many actors moving on to Saturday Night Live, professional theater, or television and/or movies.

**ANSWER:**　　**Defendant admits it is a premier comedy organization and is proud that some performers have moved on to appear in theater, television and movies, including a select few that have appeared on Saturday Night Live. Defendant affirmatively states that the majority of individuals who perform in Second City productions do not appear on**

**Saturday Night Live or other professional theater, television or motion picture productions.**

<u>"A Red Line Runs Through It"</u>

20.     In or around January of 2016, Morehead signed a contract with Second City to write and act in an ETC program entitled "A Redline Runs Through It."

**<u>ANSWER</u>:     Admitted.**


21.     The program was written by Morehead and other members of the cast from approximately January to April of 2016.

**<u>ANSWER</u>:     Admitted.**


22.     The program went into production in April of 2016 and was scheduled to conclude its run in or around January of 2017.

**<u>ANSWER</u>:     Admitted.**


23.     The majority of the cast of this program was minority.

**<u>ANSWER</u>:     Denied.**


24.     During the course of the program, one of the African-American cast members, Aeaia [sic] Bullock embarked upon a campaign of racial harassment toward Morehead. This included:

            a. Calling him "White Jesus";

            b. Stating that she "wishes that all white people were dead";

            c. Threatening to "slap the shit" out of him (presumably because he is Caucasian);

            d. Holding up a sign that says "I hate honkies" during a show and then explaining backstage that "what the audience doesn't know is that I meant I hate white people";

            e. Calling Morehead a "cracker";

            f. Complaining that the show was a "white ass show";

            g. Stating that they should "shoot" Morehead (again presumably because he is Caucasian); and

h. Physically throwing her shoulder into his chest during a show.

**ANSWER:    Defendant denies all allegations of racial harassment and therefore denies this paragraph in whole.**

Retaliatory Termination

25.     During the relevant time period, Second City had no policy directing employees to make a complaint of discrimination to a particular person.

**ANSWER:    Denied.**


26.     In May of 2016, Morehead made a formal complaint of discrimination to Alison Riley, the show's producer.

**ANSWER:    Denied.**


27.      Ms. Riley promised that she would deal with the situation, but failed to do so.

**ANSWER:    Denied.**


28.     Morehead made several other complaints during the course of the production and Second City took no action.

**ANSWER:    Denied.**


29.     In September of 2016, Morehead was physically assaulted by Ms. Bullock and made a complaint to the stage manager, Laura Hamm.

**ANSWER:    Denied.**


30.     Shortly thereafter, Morehead was told that he was being suspended from the production indefinitely.

**ANSWER:    Denied.**


31.     Morehead was not given a reason for his suspension or why it was indefinite.

**ANSWER:    Denied.**


32.     Morehead was replaced in that production by another actor until the end of its run.

**ANSWER:** **Defendant admits it replaced plaintiff and other actors from the show with understudies.**

33. Morehead was not offered a new acting contract as he would otherwise have expected and was told would happen before he made his complaint of discrimination.

**ANSWER:** **Defendant admits only that plaintiff was not immediately cast in a different production after A Red Line Runs Through It. Defendant lacks sufficient knowledge as to what plaintiff expected. Defendant denies plaintiff was told he would be cast in another production after "A Red Line Runs Through It." Defendant denies any remaining allegations in this paragraph.**

<u>**Demand for Relief for Discrimination and Retaliation**</u>
<u>**in Violation of 42 U.S.C. §2000e et seq.**</u>
<u>**(Title VII of the Civil Rights Act of 1964, as amended) and**</u>
<u>**42 U.S.C. §1981**</u>

34. Plaintiff restates and re-alleges paragraphs 1 through 33 as paragraph 34 of this Demand for Relief.

**ANSWER:** **Defendant restates its answers to paragraphs 1-33 for its answer to this paragraph 34.**

35. By virtue of the foregoing, Defendant violated Title VII by discriminating and retaliating against Plaintiff on the basis of his race and his complaint of racial discrimination.

**ANSWER:** **Denied.**

36. As a result of Defendants' unlawful acts, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature.

**ANSWER:** **Denied.**

37. Defendants' violations were wanton and willful, warranting the imposition of punitive damages.

**ANSWER:** **Denied.**

WHEREFORE, Plaintiff, Scott Morehead, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Second City for back pay, lost benefits, front pay, compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief this Court deems just and equitable.

**ANSWER:** **Defendant denies all allegations of unlawful harassment, discrimination and retaliation and denies plaintiff is entitled to any relief whatsoever.**

## AFFIRMATIVE DEFENSES

1. **At all times relevant herein, the defendant engaged in good faith efforts to comply with the law.**
2. **Plaintiff's claims for damages are barred or reduced to the extent that he failed to properly mitigate his alleged damages.**

Respectfully submitted,
Schueler. Dallavo & Casieri

_____

An Attorney for Defendant

Katherine A. Rodosky
Schueler, Dallavo & Casieri
233 South Wacker Drive
Suite 6150
Chicago, Illinois 60606
(312) 831-1090
krodosky@sdc-atty.com